CASE NO. 24-5136

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

**BRUCE MUNRO,**
Plaintiff-Appellant
v.

**U.S. COPYRIGHT OFFICE AND
REGISTER OF COPYRIGHTS,**
Defendant-Appellees

On Appeal from the United States District Court
for the District of Columbia
District Court Case No. 1:22-cv-02909-TJK

**Appellant Munro's Motion in View of Intervening
Supreme Court Precedent to Vacate or Set Aside the District
Court's Order and Opinion and Remand the Case for Reconsideration**

CARL F. SCHWENKER
LAW OFFICE OF CARL F.
SCHWENKER
3807 Duval Street, Suite E
Austin, TX 78751
512.480.8427 – Telephone
cfslaw@swbell.net

JOEL B. ROTHMAN
SRIPLAW
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
joel.rothman@sriplaw.com


*Counsel for Appellant*

**Appellant Munro's Motion in View of Intervening
Supreme Court Precedent to Vacate or Set Aside the District
Court's Order and Opinion and Remand the Case for Reconsideration**

Appellant Bruce Munro ("Appellant" or "Munro"), by and through undersigned counsel, pursuant to the Clerk's orders of June 21, 2024 (Doc. #2060979) and August 3, 2024 (Doc. #2069287), and under Rule 27 of the Federal Rules of Appellate Procedure, submits this motion ("Motion") and respectfully moves this Court in view of intervening Supreme Court precent to vacate or set aside the district court's March 18, 2024 order (ECF[1] 36 ("Order")) and memorandum opinion (ECF 37 ("Opinion")) underlying this appeal, and remand the case for district court reconsideration pursuant to such intervening precedent.[2] Counsel for Munro corresponded with counsel for appellees U.S. Copyright Office and Register of Copyrights (together, "Appellees" or "USCO"), who in a responsive email indicated an intent to oppose this Motion.

## Introduction

The "normal . . . practice when intervening Supreme Court precedent affects a case pending before [a federal court of appeals] . . . is [to] vacate the judgment

---

[1] "ECF" cites herein are to district court electronic docket entries for underlying Case No. 1:22-cv-02909-TJK from the U.S. District Court for the District of Columbia.

[2] Copies of the Order and Opinion entered by the Honorable District Judge Timothy J. Kelly are already included in the record in this case. *See* Doc. #2060868).

below and remand for reconsideration in light of the new decision." *Utah v. Su*, 109 F.4th 313, 319 (5th Cir. 2024) (citations omitted). Such is the situation here.

Seismic opinions filled the end of the most-recent Supreme Court term. Two in particular, the *Loper Bright Enterprises v. Raimondo* opinion, 603 U.S. __, 144 S. Ct. 2244, 2024 U.S. LEXIS 2882 (June 28, 2024) ("*Loper Bright*"), and the *Securities and Exchange Comm'n v. Jarkesy* opinion, 603 U.S. __, 144 S. Ct. 2117, 2024 U.S. LEXIS 2847 (June 27, 2024) ("*Jarkesy*"), altered significantly the legal landscape for agency action and judicial review thereof, and bear on and impact evaluation of the present case. But that precedent and the instructive guidance therein was unavailable for consideration by the time of the district court's earlier issuance of its March 2024 Order and Opinion. Accordingly, this Court should summarily vacate or set aside the Order and Opinion and remand the case for district court reconsideration in view of the intervening Supreme Court precedents.

## Background

This copyright appeal concerns USCO refusal to register copyright in a three-dimensional mixed-media stemmed-sphere sculpture created in 2012 by acclaimed artist Bruce Munro and judicial review thereof under the Administrative Procedure Act ("APA"), where the summarily-affirmed USCO registration refusal rested solely on the USCO's interpretation of the "creativity" prong of the constitutionally-rooted copyright criteria of "originality." *See* Opinion at 1, 3, 6

(citing application and deposit materials depicting sculpture (excerpted from ECF 35 at 6-9)); ECF 35 at 29-30, 39-40, 43. The intervening *Loper Bright* and *Jarkesy* opinions that issued during this appeal impact evaluation of the present case in view of Copyright Office practices applied by the USCO against Munro's work, the district court review thereof, and historical U.S. copyright law principals.

## I.   Copyright in a Work Automatically Subsists upon Creation

U.S. law does not require an owner to register a work with the Copyright Office to obtain copyright protection; rather, copyright "subsists on creation and … endures" to "70 years after the author's death." 17 U.S.C. § 302(a).

Copyright under U.S. law is automatic—and by law an immediate vesting right—as "[c]opyright protection subsists in <u>original</u> works of authorship," 17 U.S.C. § 102(a) (emphasis added), "includ[ing for] ... sculptural works," *id.*, like Munro's subject sculpture. Opinion at 3 (depicting the sculpture). Notably, an author has a valid copyright in an original work at the moment it is created and fixed in a tangible medium of expression. *See* 17 U.S.C. § 102(a); *McCaskill v. Ray*, 279 Fed. Appx. 913, 916 (11th Cir. 2008) (citing *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 823 n.1 (11th Cir. 1982)). "Copyright registration is not a prerequisite to copyright protection. Moreover, registration of a copyright 'is not obligatory, although registration is a prerequisite to an infringement suit in certain circumstances and also is a prerequisite to certain

infringement remedies.'" *Id*. (internal citation omitted); *see* 17 U.S.C. §§ 408, 411, 412; *Fourth Estate Public Benefit Corp v. Wall-Street.com*, 586 U.S. __, 139 S. Ct. 881 (2019) (Copyright Office registration, or refusal thereof, is a prerequisite to a federal court copyright infringement action).[3]

## II.     Historical Treatment of Copyright under U.S. Law

### A. Copyright is not the Exclusive Purview of the Copyright Office

Copyright is not now nor has it been the exclusive purview of the Copyright Office, which is a department of the Library of Congress.[4] To the contrary, the office was not formed until 1870 or congressionally recognized as a separate department until 1897. *See* www.copyright.gov/about (Copyright Office "overview" webpage). Nor was copyright registration contingent on prior examination by the Copyright Office or another agency for most of the nation's history. *See Burrow-Giles Lithographic Co. v. Sarony,* 111 U. S. 53, 59 (1884) ("Our copyright system [under the 1790, 1831, and 1874 Acts] has no [ ] provision for previous examination by a proper tribunal as to the originality of the book, map, or other matter offered for copyright. A deposit of two copies of the article or

---

[3] Registration confers added benefits, *see* 17 U.S.C. §§ 410(c), 411(a), 412, which in practice substantially affect the ability to enforce copyright protections.

[4] Although the Copyright Office is a congressional department, not an administrative agency, Congress has provided that its Review Board decisions refusing copyright registration constitute "final agency action" subject to judicial review under the APA. *See* 37 C.F.R. § 202.5(g); 5 U.S.C. §§ 701(b)(1), (e), and 704.

work with the Librarian of Congress, with the name of the author and its title page, is all that is necessary to secure a copyright.").

### B. Copyright in "Original" Works Emanates from the Constitution

Copyright is instead a fundamentally constitutional matter. The source of authors' exclusive rights is the Constitution, which in its copyright clause states:

> Congress shall have Power … [t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.

U.S. Const., Art. I § 8, cl. 8. "Originality is a constitutional requirement ... [from] Article I, § 8, cl. 8, of the Constitution," *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 346 (1991) ("*Feist*"), "[which] requires independent creation plus a modicum of creativity." *Id.* (citing *The Trade-Mark Cases,* 100 U.S. 82 (1879) and *Burrow-Giles Lithographic Co. v. Sarony,* 111 U.S. 53 (1884)).

### C. The Constitutionally-derived Originality Threshold for Copyright is Extremely Low and is a Standard Defined by the Courts

The requirements for originality are "modest." *Weissmann v. Freeman,* 868 F.2d 1313, 1321 (2d Cir.1989). "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist,* 499 U.S. at 345 (citing 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990) ("Nimmer")).

It is well established that the originality requirement for obtaining a copyright is an <u>extremely low threshold</u>, unlike the novelty requirement for securing a patent. <u>Sufficient originality for copyright purposes amounts to little more than a prohibition of actual copying</u>.

*Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir.1988) (emphasis added) (internal quotation omitted); *see also Atari Games Corp. v. Oman,* 979 F.2d 242, 244 (D.C. Cir. 1992) ("*Atari II*") (a "modicum of creativity" qualifies a work for copyright).[5]

As the Supreme Court explained:

To be sure, <u>the requisite level of creativity is extremely low; even a slight amount will suffice</u>. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. To illustrate, assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence, copyrightable.

*Feist,* 499 U.S. at 345-46 (citing Nimmer at § 1.08[C][1]) (emphasis added); *see Gaste,* 863 F.2d at 1066.[6] Thus, "the presence of similar[ities] … in other works is irrelevant in assessing originality." *Vargas v. Pfizer, Inc.,* 418 F. Supp. 2d

---

[5] The ordinary dictionary meaning of "modicum" is "a small amount." Britannica Dictionary, www.britannica.com/dictionary/modicum (online ed.).

[6] Legal scholars observe that "[i]f the bar [for originality] in patent is perhaps too low, in copyright it is nearly resting on the floor." Ronald A. Cass & Keith N. Hylton, LAWS OF CREATION: PROPERTY RIGHTS IN THE WORLD OF IDEAS 105 (2013). This minimal standard promotes copyright law's ultimate aim "to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975).

369, 372 (S.D.N.Y. 2005).[7]

### D. Whether for Copyright Purposes Works are Original and Creative are Traditionally Legal Matters for Determination by Courts and Juries

The caselaw above plainly reflects that the arbiter of these constitutionally-derived copyright standards throughout U.S. history has been the judiciary, not the Copyright Office. *See supra*; *see also Atari II*, at 247 ("It is not the [Copyright] Register's task to shape the protection threshold or ratchet it up beyond the 'minimal creative spark required by the Copyright Act and the Constitution.'") (quoting *Feist*, at 363). The issue of a work's originality and creativity sufficient to instill it with copyright has therefore traditionally been a legal matter for determination in the courts. *See, e.g., Burrow-Giles Lithographic Co. v. Sarony*, 111 U. S. 53, 59-60 (1884) ("[W]hen the supposed author sues for a violation of his copyright, the existence of those facts of originality, of intellectual production, of thought, and conception on the part of the author should be proved [.] In the case before us, we think this has been done."). And "[t]ypically, '[w]hen the originality of a copyrighted work is at issue, it becomes a question of fact for the jury to resolve.'" *Vargas v. Pfizer, Inc.,* 418 F. Supp. 2d 369, 372 (S.D.N.Y.

---

[7] "As the Supreme Court's decision in [*Feist* also] makes clear, a work may be copyrightable even though it is entirely a compilation of unprotectible elements." *Knitwaves, Inc. v. Lollytog Ltd. (Inc.),* 71 F.3d 996, 1003-04 (2d Cir. 1995).

2005) (quoting *Tin Pan Apple, Inc. v. Miller Brewing Co., Inc.,* 30 U.S.P.Q.2d

(BNA) 1791, 1994 WL 62360, at *4 (S.D.N.Y. Feb. 24, 1994) (collecting cases));

*see Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) (noting that

juries, not judges, decide disputed questions of fact in copyright cases).

### III. The USCO Subjected Munro's Work and the Application for Copyright Registration Thereon to Heightened Review Processes Instituted by the 1976 Copyright Act

The present appeal arises out of Munro's effort beginning in 2019 to register

copyright in Munro's mixed-media stemmed-sphere sculpture, ECF 35 at 4-9, 19-

21, 29-53; ECF 29-1 at 3, and the USCO refusal of registration. ECF 35 at 16, 23-

26, 54-60; Opinion at 1.

### A. Munro Sought to Register Copyright in His 2012 Work

Munro is an acclaimed contemporary artist best known for creating and

through his studio producing three-dimensional sculptures from mixed media

materials that allow his artwork to incorporate and feature light akin to an

additional artistic medium. ECF 35 at 29-30, 39-41, 43-44; ECF 29-1 at 5-6; *see*

*also* ECF 35 at 26-27, 35-43.[8] Munro created and first published the three-

---

[8] Munro holds copyrights on multiple sculptural works, including several U.S. copyright registrations registered in the visual arts category by the Copyright Office. *See* ECF No. 29-1 at 6, ¶4; *see also* U.S. Copyright Reg. Nos. VA0002176825 (*Forest of Light*, 2012), VA0002169192 (*Field of Light at Sensorio*, 2019), VA0002374575 (*Brookgreen Southern Light 2020: Field of Light*, 2020), and VA0002394572 (*Freedom Plaza 2023: Field of Light*, 2023).

dimensional stemmed-sphere sculpture at issue in this copyright case in 2012. ECF 35 at 5; Opinion at 1, 3. In 2019, Munro submitted an application and deposit copies to the Copyright Office to register copyright in that work. ECF 35 at 4-9.

### B. Review Proceeded per the 1976 Act, which Provided a Non-Judicial Parallel "In-house" Copyright Office Track for Copyright Assessment

All USCO assessment of Munro's sculptural work and associated copyright registration application, including the first and second reconsiderations thereof, was conducted in-house by the Copyright Office and its personnel, ECF 35 at 10-16, 23-26, 54-60, pursuant to administrative procedures Congress instituted in the 1976 Copyright Act (the "1976 Act"). *See* 17 U.S.C. §§ 407-412; *see also* 37 C.F.R. Part 202; *id.* at § 202.5.

Federal copyright registration was, until somewhat recently, a ministerial recordation process. *See Burrow-Giles Lithographic Co.,* 111 U.S. at 59; 1909 Copyright Act, 35 Stat. 1705 (Pub. Law 60-349) at §§ 10, 12, 34 (Mar. 4, 1909). That changed when the 1976 Act ushered in the modern system of heightened bureaucratic review. Congress authorized and enacted therein a series of statutes, regulations, and procedures providing for detailed Copyright Office review and "reconsideration" of applications and their underlying works not just for ministerial conformance but also for copyrightable subject matter and legal compliance with statutory criteria. *See* 17 U.S.C. § 410(a) & (b); 37 C.F.R. §

202.5; *see also Atari Games Corp. v. Oman*, 888 F.2d 878, 880 (D.C. Cir. 1989)

("*Atari I*") (noting the dual judicial and in-house tracks for copyright assessment

and their distinct standards and procedures); Opinion at 5-6, 14-15 (noting same).

> **C. The Copyright Office Followed its "Compendium" of Copyright Law Interpretations and Policies—Including on Criteria of Originality and Creativity—which it Subjects Applicants to and Cited for its Refusal to Register Copyright in Munro's Work**

In conjunction with these reviews, the Copyright Office maintains a

Compendium of Copyright Office Practices ("Compendium"). The Compendium

reflects the Copyright Office's view on requirements for copyright,

> is the administrative manual of the Register of Copyrights …[,] and explains the many technical requirements, regulations, and legal interpretations of the U.S. Copyright Office with a primary focus on the registration of copyright claims ….

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES at

Introduction (3d ed. 2021). It has lengthy chapters on the USCO's views on what

can be registered (*id.* at Ch. 300), examination practices (*id.* at Ch. 600), and visual

art works (*id.* at Ch. 900) and myriad interpretations and provisions on originality

and creativity. *See, e.g., id.,* at §§ 307-308.2, 310.9, 905-906.10.

The USCO, under vacillating rationales while operating remotely during the

COVID-19 pandemic, *compare* ECF 35 at 23 *with* ECF 35 at 58; ECF 35 at 11

(R6:C6), and over Munro objections and disputes as to USCO legal interpretations

of governing copyright law originality and underlying creativity standards and the

cascading (mis)application thereof, *e.g.*, ECF 35 at 31-37,[9] ultimately refused

Munro's registration request. ECF 35 at 11, 54, 60. The stemmed-sphere sculpture,

the USCO begrudgingly acknowledged, "is a sculptural work" and "is not a useful

article," ECF No. 35 at 58 (emphasis added); Opinion at 6 n.3, but nevertheless

denied the work registration as not being "sufficiently creative" to attain copyright.

*Id*. at 59-60.

Federal statutes do not define what suffices as or is "original" (or "creative")

for purposes of copyright or Section 102 of the Act. *See, e.g.,* 17 U.S.C. §§ 101-

103; *see supra* (noting the courts' primacy in interpreting those legal terms and

standards). Refusal was instead chiefly grounded on Compendium-interpreted legal

standards and thresholds for creativity under the constitutionally-derived

originality inquiry for copyright, as further interpreted and then applied by

reviewing USCO personnel in opposition to Munro's positions. ECF 35 at 56-60

(citing, e.g., COMPENDIUM (THIRD) at §§ 309.3, 310.2, 310.3, 310.9, 906.1, plus

noncontemporaneous internet materials the USCO pulled from outside the record

as supposed examples of comparative "common design choices"). The USCO also

---

[9] Munro has consistently—both before the Copyright Office and the district court on its review—disputed various interpretations the USCO has made on the "modicum of creativity" legal standard, contending that the USCO and its Compendium have deviated from court precedent to ratchet up the standard, and as to the appropriate operative legal considerations for originality. ECF 35 at 34-37; ECF 29.1 at 5, 10-14, 17-18, 22-27; Opinion at 10-13.

notably relied, in part, for its final refusal and decision to exclude consideration of material selection on COMPENDIUM (THIRD) § 310.9 ("As a general rule, the materials used to create a work have no bearing on the originality analysis"), despite that Compendium section lacking a single case supporting that proposition—which it appears is wholly (and impermissibly)[10] a Copyright Office-created legal standard on originality—and material selection here plainly being a highly-significant, contributing factor to the visual aspects of Munro's sculpture. ECF 35 at 6, 8; *see Mazer v. Stein*, 347 U.S. 201, 214 (1954). ("[T]he author's tangible expression of his ideas … whether meticulously delineating the model or mental image or conveying the meaning by modernistic form or color, is copyrightable.") (quoted in COMPENDIUM (THIRD) § 905 (regarding visual art works)). Resting in predominant part on such interpretations, the USCO's final refusal concluded that Munro's selection, combination, and arrangement of sculptural elements "is not sufficient to render the Work original." ECF 35 at 58.

Notably, the USCO both advocated positions in <u>and</u> was sole arbitrator of the Copyright Office proceeding, which afforded Munro none of the process or protections historically accompanying determinations of copyright originality and creativity, i.e., typically a court proceeding under federal rules of evidence and

---

[10] *See Loper Bright* discussion, infra.

procedure before a neutral Article III judge with rights to jury determination of factual matters. *See supra* at Secs. II(B)-(D).

### D. Judicial Review was Conducted under APA Procedures and Deferential Standards and Relied on Copyright Office Compendium Interpretations of Originality and Creativity.

On June 25, 2021, Munro appealed the USCO's final registration refusal to district court. ECF 1. Both sides' briefs concurred that copyright originality— specifically its creativity prong—was the sole ground for refusal to register copyright in the Munro sculpture. ECF 29.1 at 15; ECF 31 at 20; Opinion at 1.

Judicial review proceeded pursuant to the APA, 5 U.S.C. § 701, *et seq*. *See* ECF 1, 36-38; Doc. #2060885 at 1-2. Under highly deferential APA review standards, Opinion at 4-6, the district court on cross-motions for summary judgment sustained the USCO's registration refusal, ECF 36; Opinion at 1, 15, affording an arbitrary-and-capricious standard of review to USCO factual determinations, *id*. at 4-5, an abuse of discretion standard to all other matters, *id*., and relying, in part, on Compendium interpretations of legal standards for originality and creativity. *Id*. at 10, 11, 13.

Offhandedly, the district court notably remarked that its decision may have been different and that it would have come to it quite differently had it "not be[en] obligated to defer to the Copyright Office" and instead addressed the question of copyrightability *de novo* as in an infringement action. Opinion at 5-6, 14-15.

### E. The *Loper Bright* and *Jarkesy* Opinions Issued During the Pendency of this Appeal

Munro timely filed for appeal to this Court on May 16, 2024. ECF 38. Six weeks later the Supreme Court announced its below-discussed, seismic *Loper Bright* and *Jarkesy* opinions, each of which upends longstanding administrative law principles and together display monumental shifts in administrative practices and procedures pertinent to the instant case.

### Legal Standard

This Court is "a court of review, not of first view." *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019) (internal quotes omitted); *see Utah v. Su*, 109 F.4th 313, 320 (5th Cir. 2024) ("appellate courts generally sit as courts 'of review, not first view'") (quoting *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 957 (5th Cir. 2024)). Thus, "normal . . . practice when intervening Supreme Court precedent affects a case pending before [a federal court of appeals] . . . is [to] vacate the judgment below and remand for reconsideration in light of the new decision." *Utah v. Su*, 109 F.4th at 319; *see also Betz v. Trainer Wortham & Co., Inc.,* 610 F.3d 1169, 1171 (9th Cir. 2010) (noting the prudence of remand in light of recent Supreme Court authority).

Remand in such situations is an "uncontroversial" commonplace practice, *Utah v. Su*, 109 F.4th at 320, n.14 (collecting cases), in part because "changes in precedent generally apply to cases on appeal." *Id*. at 319-320 (citing Richard

Fallon, et al., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1292 (7th ed. 2015)). Moreover, intervening precedent that has altered the decisional landscape, as was noted in *Utah v. Su* in regard to the *Loper Bright* opinion, 109 F.4th 313, is good basis to justify a remand. *See Cadillac of Naperville, Inc. v. Nat'l Labor Relations Bd.,* 14 F.4th 703, 719 (D.C. Cir. 2021) (per curiam); *Younger v. Glamorgan Pipe & Foundry Co.*, 561 F.2d 563, 565 (4th Cir. 1977) (vacating and remanding to the district court in light of a new Supreme Court decision); *Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012) (same). This is true irrespective of whether the intervening precent heavily impacts or may merely "affect" the case pending on appeal. *Utah v. Su*, 109 F.4th at 319 (noting that the litigants disclaimed any impact of *Chevron* deference in an effort to avoid remand on the basis of *Loper Bright*).

## Discussion

The Supreme Court's *Loper Bright* and *Jarkesy* opinions effect assessment of this case—potentially significantly—and warrant its remand to the district court for reconsideration in view of these landmark Supreme Court precedents.

## I. Remand is Warranted to Consider the Precedential *Jarkesy* Opinion

Remand is warranted in view of the Supreme Court's recently issued *Jarkesy* opinion, 144 S.Ct. 2117, 2024 U.S. LEXIS 2847 (June 27, 2024), which is

pertinent intervening precedent that was not available for consideration prior to the district court issuing its subsequent Order and Opinion.

## A. *Jarkesy* Removes Traditionally Legal Matters from Agency Determination and Requires Their Consideration by Article III Courts and Juries

*Jarkesy* is a seminal separation-of-powers and Seventh Amendment opinion restricting agency determination of matters traditionally heard by Article III courts and juries. *Jarkesy*, 144 S.Ct. 2117, 2124-25, 2127-2128.

*Jarkesy* concerns an enforcement action brought by, and heard before, the Securities and Exchange Commission ("SEC") against a broker for civil fines for securities fraud violations. *Id.* at 2124-27. There, as here, Congress statutorily provided a parallel agency forum for determination of issues routinely determinable in federal court, i.e., civil fines for securities violations. *Id.* at 2125-26. Enforcement actions could therefore occur either (a) in district court under federal rules before an Article III judge with a jury deciding factual matters, or, as in *Jarkesy*, (b) in house before the agency, where it would be administratively decided without a jury by the Commission or an SEC administrative law judge. *Id.* Further, any judicial review of the agency's in-house action would deem "conclusive" any factual determinations supported in the record and occur under highly deferential APA review standards. *Id.* at 2126.

The Supreme Court, on review of Mr. Jarkesy's challenge to the proceeding, held Congress' statutory scheme to be constitutionally flawed on multiple grounds. *Id.* at 2127-28. First, the Seventh Amendment protects litigants' right to trial by jury where the claim is historically "legal in nature," *id.* at 2127-30, which fraud claims are. *Id*. Second, the Supreme Court explained, "'[t]raditional legal claims' must be decided by courts, 'whether they originate in a newly fashioned regulatory scheme or possess a long line of common-law forebears.'" *Id.* at 2135 (citing *Granfinanciera S. A. v. Nordberg*, 492 U. S. 33, 52 (1989)). Delegating determination of inherently legal matters to an agency instead of the judiciary was, therefore, a separation-of-powers violation, too. *Id.* at 2131-32, 2139. Further, the right to judicial determination of a matter inherently includes the right to a neutral arbitrator (i.e., an Article III judge), which in the in-house SEC proceeding was not satisfied by appointment of an agency insider to decide the matter. *Id.* at 2139.

> ### B. The Copyright Office's In-house Review Procedure Mirrors the In-house SEC Enforcement Procedure Rejected in *Jarkesy* and Compels Remand for Reconsideration in view of *Jarkesy*

Each of the above constitutional flaws the Supreme Court identified with regard to the SEC proceeding are equally evident in the Copyright Office's above-discussed non-neutral review procedures that were applied to the copyright originality (and underlying creativity) inquiry on Munro's sculptural work and associated copyright registration application. *See supa* at Sec. II (citing cases). This

sort of originality assessment, however, has traditionally been legal in nature,

within the guise of a legal claim (i.e., infringement), and historically determined by

courts, neutral Article III judges, and their juries as to issues of fact. *Id.*; *see also*

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 347, 355 (1998)

(noting that the Supreme Court has held that the Seventh Amendment attaches to

fact disputes in copyright cases and that since the 17th century copyright actions

historically have been actions at law tried to juries) (compiling cases); 1909

Copyright Act, 35 Stat. 1705 (Pub. Law 60-349) at § 34 (Mar. 4, 1909); Act of

May 31, 1790, 1 Stat. 124 (original federal statute on copyright).

     In light of *Jarkesy*, with regard to determinations of copyright originality as

in this case, the 1976 Act's parallel delegation of that determination to the

Copyright Office is at minimum constitutionally suspect, particularly since "[t]he

Constitution prohibits Congress from 'withdraw[ing] from judicial cognizance any

matter which, from its nature, is the subject of a suit at the common law.'" *Jarkesy*

144 S. Ct. 2117, 2123 (quoting *Murray's Lessee v. Hoboken Land & Improvement*

*Co.*, 59 U.S. 272, 18 How. 272, 284 (1856)); *see also Dimick v. Schiedt*, 293 U.S.

474, 486 (1935) ("any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.").[11]

Accordingly, remand to the district court is warranted so that it may consider the implication of the *Jarkesy* opinion on this case.

## II. Remand is Warranted to Consider the Precedential *Loper Bright* Opinion

Remand is also warranted in view of the Supreme Court's recently issued *Loper Bright* opinion, 603 U.S. __, 144 S. Ct. 2244, 2024 U.S. LEXIS 2882 (June 28, 2024), which is also pertinent intervening precedent that was not available for consideration prior to the district court issuing its subsequent Order and Opinion.

### A. *Loper Bright* overruled *Chevron*, Extensively Altered the Deference Shown to Agencies' Interpretations of Law, and Warrants Remand of this Case

*Loper Bright*, another seismic administrative law opinion that "upended [the] legal landscape" for review of agency action, *Utah v. Su*, 109 F.4th 313, 318 (5th Cir. 2024), overturned *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984) ("*Chevron*") and cast aside its longstanding standards for judicial review of agency action, *id.,* which for decades afforded significant deference (colloquially known as "*Chevron* deference") to agency

---

[11] To be sure, there are various matters relating to copyright that the USCO may decide in house for compliance with Copyright Act registration requirements. But under *Jarkesy* originality and creativity are not among them.

determinations in their interpretation and application of relevant law to a matter.

*E.g., Chevron*, at 837-38.

Of particular importance to the immediate case, the Supreme Court

explained and held in *Loper Bright* that:

> In addition to prescribing procedures for agency action, the APA delineates the basic contours of judicial review of such action. As relevant here, Section 706 directs that "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. It further requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." § 706(2)(A).
>
> The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment. It specifies that <u>courts, not agencies, will decide "all relevant questions of law" arising on review of agency action, § 706 (emphasis added)—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it. And it prescribes no deferential standard for courts to employ in answering those legal questions</u>. …
>
> [B]y directing courts to "interpret constitutional and statutory provisions" without differentiating between the two, Section 706 makes clear that agency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference. Under the APA, it thus "remains the responsibility of the court to decide whether the law means what the agency says." *Perez* v. *Mortgage Bankers Assn.*, 575 U. S. 92, 109 (2015) (Scalia, J., concurring in judgment).

*Loper Bright*, 144 S. Ct. 2244, 2260; *see also U.S. West, Inc. v. FCC*, 182 F.3d

1224, 1231 (10th Cir. 1999) (courts afford agencies no deference in interpreting

the Constitution and "deference to an agency interpretation is inappropriate not only when it is conclusively unconstitutional, but also when it raises serious constitutional questions [like copyright originality inquiry at issue here]") (citations omitted).

Although the 1976 Act defines many of the key terms used throughout its provisions, "originality" is noticeably absent. 17 U.S.C. § 101; *see id.* at §§ 102-103. It is thus precisely the sort of unclear, constitutionally-derived provision that *Loper Bright* prohibits agencies from making gap-filling assumptions, pronouncements, interpretations of, such as those in the Copyright Office's Compendium.

*Loper Bright* is therefore not simply confined to *Chevron*, it contains broad directives likely to bear on the evaluation of this case and subsidiary interpretations of the law pertaining to copyright originality and creativity. Accordingly, this Court should summarily vacate the district court's Order and Opinion and remand the case for district court reconsideration in view of the Supreme Court's intervening guidance in the *Loper Bright* opinion, too.

## Conclusion

For the foregoing reasons, Munro respectfully requests that this Court vacate the district court's Order (ECF 36) and Opinion (ECF 37) and remand this case to

the district court for reconsideration and further proceedings in view of and

consistent with the Supreme Court's opinions *Loper Bright* and *Jarkesy*.

Dated: September 10, 2024               Respectfully submitted,

**LAW OFFICES OF CARL F. SCHWENKER**

*/s/ Carl F. Schwenker*
Carl F. Schwenker (TX #00788374)
cfslaw@swbell.net
The Parsons House
3807 Duval Street, Suite E
Austin, TX 78751
512.480.8427 – Telephone
512.857.1294 – Facsimile

**SRIPLAW**

*/s/ Joel B. Rothman*
Joel B. Rothman (FL #98220)
joel.rothman@sriplaw.com
21301 Powerline Road, Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

**Certificate of Compliance with Type-Volume Limit, Typeface Requirements and Type-Style Requirements**

1.  This filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font with one-inch margins

2.  This filing complies with the type-volume limit of Fed. R. App. P. 27(d)(1) and the word limit of Fed. R. App. P 5(c)(1) because this document contains 5,070 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

By: */s/ Carl F. Schwenker*
Carl F. Schwenker (TX # 00788374)

## CERTIFICATE OF SERVICE

 X  I hereby certify that on <u>September 10, 2024</u> I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

___ I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants: N/A.

By: <u>*/s/ Joel B. Rothman*          </u>
    Joel B. Rothman (FL #98220)

# ADDENDUM A
## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1) and this Court's Order of May 20, 2024, Appellant Bruce Munro ("Appellant" or "Munro") submits this Certificate as to Parties, Rulings, and Related Cases:

(A)     <u>Parties and Amici</u>. The following is a list of all parties, intervenors, and amici before this Court or who appeared before the District Court:

   Bruce Munro (plaintiff/appellant);
   United Stated Copyright Office (defendant/appellant)
   Register of Copyrights (defendant/appellant)

(B)     <u>Rulings Under Review</u>. This appeal is from the Order (ECF No. 36) and Memorandum Opinion (ECF No. 37) entered March 18, 2024 by the Honorable U.S. District Court Judge Timothy J. Kelly, U.S. District Court for the District of Columbia, in Case No. 1:22-cv-02909-TJK.

(C)     <u>Related Cases</u>. The case on review in this appeal was not previously on review before this or any other court and does not relate to any cases between the same or substantially similar parties.